Martin, J.
Crouse’s claim to contribution from the other sureties rests on the assumption that they were co-sureties with him. The right 'to contribution as between co-sureties is well established. It is founded, not on contract duty, but on the equitable principle that the discharge of the obligation by which they were equally bound, being for their equal benefit, should be obtained at their equal expense. Craythorne v. Swinburne, 14 Ves., 160.
In the case under consideration Crouse, Wagner and Smith were each and all sureties for Renick on the same note. Crouse having paid the obligation is entitled, prima facie, to contribution to the extent that the burden may be equalized. But this prima facie case may be overcome. Sureties for the same person and the same engagement are not always co-sureties. It is claimed that Wagner and Smith were not his co-sureties, because they stipulated to the contrary at the time they signed the note. It is admitted that they then stipulated by adding to their respective names the words, “ Security for D. J. Crouse.”
*473 The question as to the validity of this stipulation depends on the circumstances under which it was made. It is well settled that where a surety signs a note and delivers it to his principal without any limit on his authority to use it for the purpose intended, a subsequent surety signing the same may stipulate with his principal as surety for the prior surety. Oldham v. Brown, 28 Ohio St., 41.
Such a stipulation does not enlarge or qualify the liability of the prior surety. He remains bound precisely as he agreed to be in the first instance. And no legal or equitable considerations intervene to affect the validity of the stipulation. The second surety, as well as the first, is a mere accommodation maker, and having no pecuniary interest to be subserved by the undertaking, he may well fix for himself, with the assent of the principal, the relation he assumes to his co-makers. Both are directly bound to the creditor, and as between themselves the fact as to whether they are co-sureties or not may be shown by parol. Such testimony affects only the relation between themselves, and does not contradict or impair the obligation to the creditor.
It is true the stipulation was in writing, but that was a matter of convenience only. A verbal stipulation would have been equally effective. It is not a contract between the creditor and the party, nor between the sureties, but it is an arrangement between the stipulating surety and the principal in the nature of a condition. And if it interfere with no right or equity of the prior surety it is valid. But it would be anomalous to hold that a prior surety is concluded by a stipulation simply because it is in the form of a subscript. That would be to hold him bound to terms to which he may never have assented even by implication.
The fact that the note was a renewal of one upon which Wagner and Smith alone were sureties is a circumstance of great weight. True, the sureties disputed their liability. And they were told by Mrs. Reniek that Crouse was largely indebted to her, and would sign as surety. And it is also true that they declined to renew except as sureties for Crouse. These circumstances fully vindicate their good *474 faith in making the stipulation, and relieve them from any suspicion of endeavoring by indirection to cast their burden on a stranger. But the record does not show the existence of any defense to the note; and the testimony is undisputed that Crouse was not indebted to Renick, and that his relation to the renewal was that of a mere surety. We must assume, therefore, that Wagner and Smith were liable on the original note, and that Crouse signed the renewal, as such, on the assurance then given him by Renick that it was a renewal, and that the former sureties would unite with him as his co-sureties. At that time the first note was past due and Renick was unable to pay it, and the sureties were concerned on account of their liability. Then the subject of Crouse’s becoming surety on a renewal became a topic of conversation between them and Mrs. Renick. They expressed their willingness to renew, but sent him no word or request. Renick, probably through a misapprehension of their language, failed to tell Crouse of their proposed stipulation. He signed under the representation that they would also sign as his co-sureties. He thus voluntarily assumed, or offered to assume, with them the burden that was previously theirs exclusively. In doing so he virtually limited the authority of Renick in the use to be made of his name, and required that she should obtain the names of the former sureties as co-sureties with him. By delivering the paper he reposed a confidence which could have been betrayed. She could have negotiated it without- the additional names. The former sureties could have obtained immunity by withdrawing their offer or entering into a collateral engagement with the creditor. But they signed as co-makers with a stipulation which is open to explanation.
Crouse’s limitation conflicts with their stipulation in consequence of Mrs. Renick’s blunder or fault in procuring his signature. In that particular she was acting as the agent of neither party, and neither is responsible for her misrepresentation. Hence the parties were equally in error. But were they equally innocent? Crouse, knowing that the renewal would lighten their burden, could have no reason *475 able suspicion of the representations made by Mrs. Renick; and in relying on them he was not at all negligent.
There was nothing to interfere with his right to limit her authority over his name, and nothing to suggest the slightest impropriety in his so doing. "Wagner and Smith indicated to Mrs. Renick their willingness to have Crouse substituted in their place. He was solvent. Their proposed suretyship for him was nominal. So far as the record informs us their proposal consisted solely in the curt phrase, “I will go security for D. J. Crouse.” Would it be surprising if an unskilled woman failed to appreciate the full significance of this offer ? On her return with Crouse’s name they added theirs with the subscript without inquiry, and without information as to the circumstances of his signing. Considering the personal benefit they had in view, we think there was some slight negligence, enough if need be to turn the scale, in the attempt made to stipulate without inquiry.
It remains to add that the issue between these parties involves their relation to each other at the time the note was delivered to the creditor. In determining this issue in favor of Crouse, who seeks contribution and is the real plaintiff in this controversy, we have not taken into account the preference sometimes accorded to the position of defendant in cases of equal right. The judgment was taken in Pickaway county, and an execution to the sheriff of that county would have been satisfied by Wagner and Smith. The record shows that they induced the creditor to depart from the common course, and through an execution to Ross county to coerce full payment from Crouse. Their equitable right to do so rested on the assumption that they were his sureties. We are not disposed in this contest between sureties to hold that a position thus secured, though with honest intent, draws to it an exceptional preference.
In short, we find that Wagner and Smith have failed to maintain their stipulation ; and further, conceding the onus to be on Crouse, we find a superior equity in his favor.

Judgment reversed.